UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IRON WORKERS' LOCAL NO. 25 PENSION
FUND et al.,

      Plaintiffs,

                                              Case No. 05-CV-70413-DT

v.

THUMB RIGGING & ERECTORS, INC. and
JOHN WAYNE RUSZTOWICZ,

      Defendants.
                                    /

**ORDER GRANTING IN PART PLAINTIFFS' "MOTION FOR SUMMARY JUDGMENT AND TO AMEND COMPLAINT"**

Pending before the court is Plaintiffs' "Motion for Summary Judgment And To Amend Complaint." The motion has been fully briefed and the court held a hearing in the matter on November 16, 2005. For the reasons stated below, the court will grant in part Plaintiffs' motion.

**I. BACKGROUND**

Defendant Thumb Rigging & Erectors, Inc., the corporate Defendant in this matter, is a signatory to a collective bargaining agreement (the "CBA") with the Iron Workers Local 25 Union. (Pls.' Mot. at Ex. B, CBA.) Mr. John Wayne Rusztowicz is the sole owner and shareholder of the corporate Defendant. (Rusztowicz Dep. at 15.) Pursuant to the CBA, the corporate Defendant is required to pay fringe benefits for each employee doing worked covered by the agreement. (Pls.' Mot. at Ex. B, CBA.) On August 31, 2004, Plaintiffs conducted an audit of the corporate Defendant that indicated a balance of $168,411.78 in unpaid contributions and $11,678.54 in liquidated damages

resulting from the audit. (*Id.* at Ex. D, Audit.) The audit included eight individuals: Bradley, B.; Cain, B.; Fultz, D.; Gray, F.; Mosher, D.; Pench, J.; Rusztowicz, J.; and Wittkamp, B. (*Id.*) In his deposition, Mr. Rusztowicz acknowledged that two individuals, D. Bradley and B. Cain, were employees of the corporate Defendant and did work covered by the CBA. (Rusztowicz Dep. at 33-39.) Plaintiffs allege that four other individuals included in the audit also did work covered by CBA. (Pls.' Mot. at ¶ 6; Rusztowicz Dep. at 32-34; 36-39.)[1]

The auditor employed in this case, Robert Reeves, testified that "the company did not keep adequate records setting forth the type of work that each and every one of the individuals employed by the company or sub-contracted by the company did work on." (Reeves Aff. at ¶ 3.) Mr. Reeves further stated that "due to the inadequacy of the records, [he] was not able to separate hours for work that was covered by the [CBA] and hours for work that were not covered by the [CBA]." (*Id.* at ¶ 4.) Mr. Reeves described his audit process as follows:

> For the four individuals on the audit for which 1099s were issued and/or who were deemed sub-contractors, I . . . took the hourly rate of $13.00 and divided it into the lump sum amount paid to the individuals to determine an hour amount in order to conduct the calculation of what fringe benefit contributions would be owed. I chose the $13.00 hourly figure based on reviewing the payroll of Thumb Rigging. There were employees paid $10.00 an hour, $13.00, and $17.00 an hour. I used $13.00 as this appeared to be an average amount paid in salary to the employees of Thumb Rigging.

(*Id.* at ¶ 5.) Plaintiffs complain that "Defendants did not produce documents in discovery nor during the deposition establishing the accuracy or inaccuracy of the audit"

---

[1] Plaintiffs have deducted the hours worked by Mr. Fultz and Mr. Rusztowicz for the purposes of their summary judgment motion and assert that the amount of contributions owed for the remaining six individuals is $121,881.29. (Pls.' Mot. at 9.)

2

and that "the documents provided did not clearly or adequately set forth that any of the six individuals [at issue] did not do work covered by the [CBA]." (Pls.' Mot. at ¶ 11.)

Plaintiffs filed their motion for summary judgment on September 12, 2005.

## II.  STANDARDS

### A.  Federal Rule of Civil Procedure 56

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material.  *See id* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'").  A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of the

claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences from the admissible evidence presented in a manner most favorable to the nonmoving party. *Dunigan v. Noble*, 390 F.3d 486,492 (6th Cir. 2004) ("we must determine 'not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed.'") The court does not weigh the evidence to determine the truth of the matter, but must determine if the evidence produced creates a genuine issue for trial. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

### B.  Federal Rule of Civil Procedure 15(a)

Leave to file an amended complaint is freely given when justice so requires. *See* Fed. R. Civ. P. 15(a). When determining whether to grant a motion to amend, the court should be led by the purpose of facilitating a decision on the merits rather than a decision based on procedural grounds. *See Forman v. Davis*, 371 U.S. 178, 181 (1962). If a court denies a plaintiff's motion for leave to amend a complaint, the court must provide a reason for denying the motion, such as undue prejudice to the opposing parties, undue delay, or because the amendment would be legally futile. *Id.* at 182.

### III.  DISCUSSION

### A.  Motion For Summary Judgment

### 1.  Corporate Defendant's Duty to Pay Contributions and Submit to an Audit

ERISA requires an employer to pay trust fund contributions according to the

terms and conditions of the CBA to which the employer is signatory. *See* 29 U.S.C. § 1145. The law also provides that trust funds are authorized to enforce this requirement. *See* 29 U.S.C. § 1132(a)(3).

Plaintiff Funds are third party-beneficiaries of the CBA between Iron Workers Local No. 25 and Defendant Thumb Rigging. *Central States, Southeast and Southwest Areas Pension Fund v. Behnke*, 883 F.2d 454, 460 (6th Cir. 1989) (citation omitted). The terms of the CBA require the corporate Defendant to make contributions to the pension funds and allows for "the Trustees, or any agent authorized by the Trustees . . . to enter upon the premises of the Employer to perform an audit and to have access to such of the Employer's records as may be necessary . . . ." (Pls.' Mot. at Ex. B, CBA at 24, 27.) Accordingly, Plaintiffs are legally entitled to enforce the terms of the CBA against the corporate Defendant.

**2. Damages Owed Pursuant to Audit Procedures**

Plaintiffs engaged in a payroll audit on Defendants based on the records Defendants provided them. Based on this audit, Plaintiffs concluded that $168,411.78 is owing to the Funds for unpaid contributions and $121,881.29 is owed for the six individuals that are the subject of their motion. (Pls.' Mot. at ¶ 13, Ex. D.) In their response, Defendants assert that D. Bradley and B. Cain were full time employees of Defendant Thumb and their job duties include "many other things other than rigging." (Defs.' Resp. at 7.) Defendants also cite Mr. Rusztowicz's testimony that 10-15% of his

business involves rigging. (Rusztowicz Dep. at 12.)[2] Defendants assert that "subcontractors who [per]form no rigging only provide gas, trucks, fuel[,] and an operator to haul a load from point A to point B." (Defs.' Resp. at 8.)

In *Michigan Laborers' Health Care Fund et al. v. Grimaldi Concrete, Inc.*, 30 F.3d 692 (6th Cir. 1994), Grimaldi Concrete entered into a CBA with the Laborers' International Union of North America, Local 1191. *Id.* at 693. Under the agreement, *Grimaldi* Concrete was "required to make payments to each of the [plaintiff] Funds for employees performing 'covered' concrete-pouring work." *Id.* at 694. The *Grimaldi* court noted that "the district court found that Grimaldi Concrete clearly violated ERISA by failing to maintain adequate records as required by 29 U.S.C. § 1059(a)(1)" and that "the penalty must fall upon the person who had legal responsibility to maintain those records." *Id.* at 695. The court ultimately concluded that, because it could not calculate the amount owed under the agreement on the basis of the incomplete invoice receipts, Grimaldi Concrete was liable for contributions for all hours worked. *Id.* at 695. More specifically, the *Grimaldi* court held that Grimaldi Concrete:

> provided no records at all with respect to 80% of the work performed under the collective bargaining agreement, and provided incomplete records with respect to the remaining 20%. . . . Grimaldi Concrete failed to maintain adequate records as required by Section 1059. The burden thus shifted to Grimaldi to prove what work was covered and what was not covered.

---

[2]Defendants attribute this testimony to "Plaintiff," however the court was able to locate testimony relating to the percentage of Defendants' business that involves rigging only in Defendant Rusztowicz's deposition transcript. Mr. Rusztowicz also testified that when the contract was signed in 2002, 30% of Thumb's business involved rigging. (Rusztowicz Dep. at 27-28.)

6

*Id.* at 696. The *Grimaldi* court determined that "under these circumstances, an employer is liable for contributions on all hours worked during a period in which it has been demonstrated that some covered work was performed." *Id.* at 697. The facts of the instant case appear to be very similar to those in *Grimaldi*, as Defendants have not submitted evidence showing that they provided Plaintiffs with the documentation that they are required by law to maintain nor that the materials they presented to Plaintiffs were sufficient for Plaintiffs to conduct a complete audit. Therefore, under *Grimaldi*, Defendants are liable to Plaintiffs in the amount of $121, 881.29.

### 3. Defendant Rusztowicz's Liability

"A company's contributions to benefit funds . . . constitute plan assets under 29 U.S.C. § 1002(21)(A) as they become due." *Southern Electrical Health Fund v. Kelley*, 308 F. Supp. 2d 847, 867 n. 10 (M.D. Tenn. 2003) (citations omitted). A person is a plan fiduciary to the extent that he exercises control or authority respecting the management or disposition of plan assets. *See* 29 U.S.C. § 1002(21)(A).

Plaintiffs allege that Defendant corporation was "a mere sham for Defendant John Rusztowicz." (Pls.' Mot. at ¶ 15.) Plaintiffs point to Mr. Rusztowicz's testimony that he was the sole shareholder and owner of the company. (Rusztowicz Dep. at 15.) Plaintiffs also note that the company never had corporate meetings, nor did it ever produce corporate minutes. (*Id.* at 21.) In addition, Mr. Rusztowicz testified during his deposition that he did not have formal documents that gave him the authority to act on behalf of the corporation. (*Id.*) Mr. Rusztowicz also stated that he placed money in the company from his personal accounts when the company needed money and is not aware of that any loan documents are drafted when he does this. (*Id.* at 23.) Moreover,

the company has not paid him interest for the loans he provided to it.  (*Id.* at 25.) Defendants have not presented evidence creating an issue of fact as to whether Defendant Rusztowicz is a plan fiduciary.

As the unpaid fringe benefit contributions had become due, they are plan assets. *Southern Electrical Health Fund*, 308 F. Supp.2d at 867 n. 10.  In addition, Defendant Rusztowicz personally exercised discretionary control over monies designated for deposit into the ERISA funds.  Pursuant to 29 U.S.C. § 1109(a), "any person who is a fiduciary and breaches a fiduciary's duty shall be personally liable to make good to such plan any losses to such plan any losses to the plan resulting from such breach." *Southern Electrical Health Fund*, 308 F. Supp. 2d at 868.  Accordingly,

## IV.  CONCLUSION

IT IS ORDERED that Plaintiffs' "Motion for Summary Judgment" [Dkt. # 10] is GRANTED IN PART.

IT IS FURTHER ORDERED that the portion of Plaintiffs' motion relating to Plaintiffs' motion to amend Plaintiffs' complaint is DENIED AS MOOT in light of the court's grant of Plaintiffs' motion for summary judgment.[3]


  S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

---

[3]Plaintiffs' counsel stated at the hearing held in this matter that she would not desire to pursue her motion to amend Plaintiffs' complaint in the event that the court granted Plaintiffs' motion for summary judgment.  Plaintiffs' motion to amend is thereby rendered moot by the court's grant of Plaintiffs' motion for summary judgment.

Dated: November 30, 2005


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 30, 2005, by electronic and/or ordinary mail.

 S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522